UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FIDELITY NATIONAL INFORMATION
SERVICES, INC., a foreign corporation,

        Plaintiff,

v.                                    Case No: 8:08-CV-2127-T-27MAP

CONRAD VEEN,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Fidelity National Information Services, Inc. ("Fidelity"), a Georgia corporation with its principal place of business located in Jacksonville, Florida, filed this action for civil theft, common law fraud, fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation against its former employee, Conrad Veen. At this juncture, Veen claims he has insufficient minimum contacts with Florida for personal jurisdiction and moves to dismiss Fidelity's complaint (doc. 11). Fidelity, on the other hand, claims that this Court's exercise of personal jurisdiction over Veen is proper and consistent with due process (doc. 13). The district judge, pursuant to his authority under 28 U.S.C. §636(b)(1)(B), referred this matter to me for a report and recommendation. After conducting an evidentiary hearing on the matter, I find that Veen's contacts with Florida satisfy the state's long arm statute and that the Court's exercise of personal jurisdiction over him would not offend the traditional notions of fair play and substantial justice. Accordingly, I recommend that Veen's motion be denied.

*A. Facts*

The jurisdictional facts, at least when examined from the Plaintiff's perspective, are not in dispute. Fidelity is a provider of core financial institution processing, credit care issuer and transaction processing services, and related information products and outsourcing services to financial institutions and retailers. Although a Georgia corporation with its principal place of business in Jacksonville, it also operates administrative offices in Maitland and St. Petersburg. Veen worked as an account manager for Fidelity from his Phoenix residence servicing a sales territory that included Arizona and, at times, some midwestern states. While he reported to a supervisor in New Hampshire and then Salt Lake City, those supervisors answered to a Fidelity vice-president in Florida. Veen acknowledges he traveled twice to Florida to attend sales meetings as part of his job duties in February 2007 and in January 2008. *See* Affidavit of Steve Egan (doc. 14).

Veen earned a commission based upon a percentage of the total value of each Fidelity product he sold to a financial institution. In December 2007, Veen sold Fidelity's ScoreCard Debit Rewards Program to the Arizona Federal Credit Union. With a contract value of $9,971,676 based on the opening of 225,685 debit card accounts at a rate of $7.80 per card, Veen stood to earn $232,075.14 in gross commissions if the financial institution fully implemented the program.

Fidelity, which serviced the Arizona Credit Union contract from its St. Peterburg facility, paid Veen one-half of his commission, or $116,037.57, in January 2008. Thereafter, on January 25, 2008, the Arizona Federal Credit Union informed Veen by email it intended to indefinitely postpone the ScoreCard Debit Rewards Program. *See* Amended Complaint (doc. 8, Exhibit 2). On February 28, 2008, the Arizona Federal Credit Union advised Veen that it had in fact indefinitely postponed the ScoreCard Debit Rewards Program. *See* Amended Complaint (doc. 8, Exhibit 3).

Notwithstanding these two emails, on May 6, 2008, Veen sent an email to Fidelity's Maitland, Florida office requesting the second half of his commission payment. *See* Amended Complaint, (doc. 8, Exhibit 4, Tammy Harris email). Relying on Veen's assertions in his email, Fidelity issued him a second commission in the gross amount of $116,037.57 from its Jacksonville, Florida office.

Veen's representations in this May 6, 2008, email are at the heart of Fidelity's claims against him for civil theft, common law fraud, fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation. Fidelity alleges that Veen requested the second half of his commission knowing that the credit union had indefinitely postponed its ScoreCard Debit Rewards Program. By May 6, the credit union had issued only 1,233 debit cards under the ScoreCard Debit Rewards Program, making the total contract value just $47,697.00. Instead of qualifying for $116,037.57 in commissions, Fidelity says Veen was only entitled to $2,623.34. On June 24, 2008, after realizing the difference between the commissions due and those paid, Fidelity advised Veen in a letter issued from its St. Petersburg office of the discrepancy and demanded he remit $79,833.86, the net amount paid to him. *See* Amended Complaint (doc. 8, Exhibit 5). When Veen failed to repay the overpayment, Fidelity filed this action. Veen, who currently resides in Denver, contends the action should be dismissed because this Court lacks personal jurisdiction over him.

*B. Standard of Review*

A federal court sitting in diversity may properly exercise personal jurisdiction over a defendant only if two requirements are met: (1) the state long arm statute and (2) the Due Process Clause of the Fourteenth Amendment. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). Thus, Fidelity must show Veen's activities and contacts in Florida satisfy Florida's long-arm statute to obtain personal

3

jurisdiction.[1] If the Court concludes that personal jurisdiction exists under Florida's long-arm statute, it must next consider whether Fidelity's contacts with the state of Florida are sufficient to satisfy the Due Process Clause of the Fourteenth Amendment. *See Venetian Salami Co.*, 554 So. 2d at 501(mere proof of any one of the several circumstances enumerated in Fla. Stat. § 48.193 does not automatically satisfy the federal constitutional requirement of minimum contacts). Determining whether due process requirements are met requires a dual analysis: (1) evaluating the defendant's contacts with Florida, and (2) deciding if the exercise of personal jurisdiction over the nonresident defendant in Florida would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457 (1940)). Unilateral action by the plaintiff or a third party cannot create the requisite "minimum contacts." *Hanson v. Denckla*, 357 U.S. 235 (1958); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). Instead, the defendant must perform "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985). To comport with due process foreseeability, the nonresident defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court there. *World Wide Volkswagen*, at 297.[2]

---

[1] Because the long-arm statute is governed by Florida law, this Court is required to construe it as would the Florida Supreme Court. *Cable/ Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 856 (11th Cir. 1990).

[2] Federal courts have discretion in deciding whether to hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). When a court holds an evidentiary hearing, the plaintiff bears the burden of proving personal jurisdiction. *Nida Corp. v. Nida*, 118 F.Supp. 2d 1223, 1228 (M.D. Fla. 2000). However, with respect to points upon which competing affidavits do not conflict, the court may

C. Discussion

1. *Florida's long-arm statute*

Florida's long arm statute, Fla. Stat. § 48.193(1)(b), provides a defendant, "whether or not a citizen or resident of this state," is subject to the jurisdiction of Florida courts if he "commit[s] a tortious act within this state." Florida courts construing this provision have noted that the alleged tortfeasor's physical presence in Florida is not required. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Rather, jurisdiction may be found in certain instances where an out-of-state defendant commits a tort that produces an injury in Florida. *Id.* The Eleventh Circuit has held that "[i]n our technologically sophisticated world permitting interstate business transactions by mail, wire, and satellite signals, physical presence by the nonresident defendant is not necessary for personal jurisdiction in the forum state." *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 857 (11th Cir. 1990) (*citing Burger King*, 471 U.S. at 476). *See generally Brennan v. Roman Catholic Diocese of Syracuse New York*, 2009 WL 941765 (11th Cir. April 9, 2009)[3] (vacating district court's dismissal for lack of personal jurisdiction where plaintiff suffered injury in Florida arising from defendant's alleged intentional misconduct in New York and its fraudulent representations directed to him in Florida); *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005) (reversing district court's dismissal for lack of personal jurisdiction under Florida's long-arm statute where complaint alleged defendant's communications

---

accept as true the allegations in the complaint for purposes of resolving jurisdictional issues under the requirements of the state's long arm statute. *Nida, supra,* at 1227 (*citing Posner, supra*, at 1215).

[3] Unpublished opinions are not binding precedent in the court; however they may be cited as persuasive authority. *See* 11th Cir. R. 36-2.

from California to plaintiff in Florida intended to deceive and defraud plaintiff); *Acquardo v. Bergeron*, 851 So. 2d 665, 671 (Fla. 2003) (finding jurisdiction under Fla. Stat. § 84.193(1)(b) where an out-of-state defendant allegedly defamed a Florida resident during a single phone call made into Florida). There must be some "connexity" between the out-of-state communications and the cause of action such that the cause of action "would depend upon proof of either the existence or content of any of the communications into Florida. *Horizon, supra,* at 1168 (*quoting Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So. 2d 1013, 1017 (Fla 4th DCA 2003)).

Veen claims that all of his actions relating to the Arizona Federal Credit Union sale occurred within Arizona, that he did not travel to Florida except for two sales meetings, and that he did not commit tortious acts in Florida. However, as alleged in the amended complaint, Veen sent an email on May 6, 2008, to Fidelity's finance department in Florida inquiring as to the status of the second half of his commission payment arising from his Arizona Federal Credit Union sale. At the time Veen sent the email, Veen knew that the credit union had decided to indefinitely postpone full implementation of the Score Card Debit Rewards Program; accordingly, he knew or should have known that he was not entitled to the full second half of his commission. *See* Amended Complaint*,* at ¶¶ 19-23. Fidelity claims that personal jurisdiction is proper in this forum since Veen sent emails containing fraudulent statements and misrepresentations to a Fidelity employee, Tammy Harris, in Maitland, Florida, and Fidelity relied upon them in deciding to pay Veen a full commission. Fidelity approved payment of Veen's full commissions, forwarded a check request to Fidelity's payroll department in Jacksonville, Florida, and the payroll department issued a check to Veen from Florida. The Eleventh Circuit has held that "a motion to dismiss a tort claim for lack of personal jurisdiction under Florida's Long-Arm Statute does not require a full-scale inquiry into whether the defendant

6

committed a tort. Instead, when a plaintiff alleges a claim, and the record is in dispute as to the accuracy of the claim, we can construe the facts in the light most favorable to the plaintiff and hold that the alleged claim satisfies Florida's Long-Arm Statute." *Brennan, supra,* at *3 (*quoting Future Technology Today, Inc. v. OSF Healthcare Systems*, 218 F.3d 1247, 1250 (11th Cir. 2000)). Following *Brennan* and *Future Technology,* I conclude that the record shows Fidelity's allegations satisfy Florida's long-arm statute.

### 2. due process analysis

#### a. minimum contacts

Having concluded the tortious act provision of Florida's long-arm statute is satisfied, this Court must analyze the long-arm jurisdiction under the due process requirements of the federal constitution. "A forum may exercise specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities to forum residents and the resulting litigation derives from alleged injuries that arise out of or relate to those activities." *Cable/Home Communication Corp., supra,* at 857 (*quoting Burger King, supra,* at 474) (internal quotations omitted). Determining minimum contacts requires the Court to ascertain whether Veen "purposefully availed" himself of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. at 253. Even one significant single act or meeting in the forum state may be sufficient to establish personal jurisdiction. *Burger King Corp.*, 471 U.S. at 475; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *Williams Electric Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 392-93 (11th Cir. 1988); *Sea-Lift, Inc. v. Reinadora Costarricense de Petroleo, S.A.,* 792 F.2d 989, 993 (11th Cir. 1986). As already stated above, in our technologically sophisticated era, physical presence

by the nonresident defendant is unnecessary for personal jurisdiction in the forum state. *Cable/Home Communication Corp., supra,* at 857 (*citing Burger King*, 471 U.S. at 476). Resolution of the minimum contacts issue depends whether the case "arises out of" or "relates to" the defendant's contacts with Florida. *Helicopteros*, 466 U.S. at 414 n.8.

Intentional torts may support the exercise of personal jurisdiction over a nonresident defendant who has but one single act supporting jurisdiction so long as it creates a "substantial connection" with the forum. *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 n.8 (11th Cir. 2008) (holding that "[w]here the internet is used as a vehicle for the deliberate, intentional misappropriation of a specific individual's trademarked name or likeness and that use is aimed at the victim's state of residence, the victim may hale the infringer into that state to obtain redress for the injury. The victim need not travel to the state where the website was created or the infringer resides to obtain relief.out-of-state"(*citing Calder v. Jones*, 465 U.S. 783 (1984)). In *Calder*, a California plaintiff sued a Florida newspaper and two of its employees in California state court arising from the publication of an allegedly libelous article about the Plaintiff. The Court stated that "in judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum and the litigation" and found that "[a]n individual in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California. *Calder*, at 788-90. Following *Calder,* the Eleventh Circuit in *Licciardello* noted that many courts apply the *Calder* "effects test" when a plaintiff's claim involves an intentional tort. *Licciardello*, 544 F.3d at 1286 (citations omitted). In fact, even more recently, the Eleventh Circuit applied the *Calder* "effects test" to conclude a district court erred in finding a lack of sufficient minimum contacts with Florida. The court stated:

> [S]o long as the purposeful conduct creates a "substantial connection" with the forum, even a single act can support jurisdiction over the non-resident defendant who has no other contacts with the forum. *Burger King Corp.*, 471 U.S. at 475. Intentional torts are such acts and may support the exercise of personal jurisdiction over the non-resident defendant who has no other contacts with the forum. *Licciardello,* 544 F.3d at 1285. In *Licciardello*, we held that the commission of an intentional tort by a nonresident expressly aimed at a resident, the effects of which were suffered by the resident in the forum, satisfied the "effects" test established in *Calder v. Jones,* 465 U.S. 783, 789-90 (1984). 544 F.3d at 1288. The "effects" test provides that due process is satisfied when the plaintiff brings suit in the forum where the "effects" or "brunt of the harm" caused by the defendant's intentional tortious activity was suffered. *Licciardello*, 544 F.3d at 1285-87. Therefore, personal jurisdiction is proper over a defendant who commits an intentional and allegedly tortious act expressly aimed at the plaintiff in the forum state. *Id.* at 1288.

*Brennan*, at *4 (*citing Licciardello, supra,* 544 F.3d 1280); *see also McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) ("[s]o long as it creates a substantial connection with the forum, even a single act can support jurisdiction); *New Lenox Ind. v. Fenton*, 510 F.Supp. 2d 893, 904 (M.D. Fla. 2007) (recognizing that "a number of courts" have held that "where a defendant's tortious conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum").

In this case, it is undisputed that Veen sent an email to Fidelity's Maitland office on May 7, 2008, thereby purposefully availing himself of the privileges of conducting activities in Florida. *See* email from Veen to Harris, (doc. 8, exhibit 4). Fidelity's reliance on his representations, his acceptance of commission payments issued by Fidelity in Florida, and two trips to Fidelity's annual sales meetings in Florida support a substantial connection with this forum. *See* Affidavit of Steve Egan, (doc. 14, exhibits A and B). These contacts, which were not fortuitous, should cause Veen to reasonably anticipate being haled into court in Florida.

Consequently, I find that Veen purposefully availed himself of the benefits and protections

9

of Florida's laws and the nature and quality of his activities in the state satisfy the prerequisite minimum contacts for establishing *in personam* jurisdiction. Following *Brennan,* taking Fidelity's allegations as true, I conclude that Veen had sufficient minimum contacts with Florida for purposes of Fidelity's alleged tort claims because Veen directed his communications to Fidelity in Florida and Fidelity felt all of its harm from the torts in Florida.[4]

### b. fair play and substantial justice

Even where a defendant has purposefully established minimum contacts with the forum state, the court must also evaluate jurisdiction in light of several other factors to determine whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 320. When assessing fairness, courts look to various factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest for the most efficient resolution of controversies. *Brennan,* at *4 (*citing World-Wide Volkswagen,* 444

---

[4] Veen cites to *Hollingsworth v. Iwerks Entertainment, Inc.,* 947 F.Supp. 473 (M.D. Fla. 1996) in support of his argument that exchange of information by telephone calls to Florida is insufficient to establish minimum contacts in Florida. However, in a similar suit another court in this district already distinguished *Hollingsworth*. *See Mehlenbacher ex rel. Asconi Corp. v. Jitaru*, 2005 WL 4585859, n.19 (M.D. Fla. June 6, 2005) (case no. 6:04cv1118-Orl-22KRS). The *Mehlenbacher* court found *Hollingsworth* "distinguishable on the basis that its due process analysis contains no discussion of *Calder.*" As discussed above and as the Plaintiff states in its memorandum of law, "the fact that [Veen] was not physically in Florida for any substantial period of time does not mean that exercise of jurisdiction over him violates the Due Process Clause." (doc. 13, p. 9) Like the defendant in *Calder*, Veen is not charged with mere untargeted negligence. Rather, taking the facts as alleged in the amended complaint as true, his intentional, allegedly tortious actions were expressly aimed at Fidelity in Florida as he drafted and sent an email to Florida that he knew would have a potentially devastating impact upon Fidelity which relied upon the email's contents in paying him a commission. Under these circumstances, as in *Calder*, Veen must reasonably anticipate being haled into court in Florida and Fidelity which was injured in Florida, need not go elsewhere to seek redress from Veen who knowingly caused injury in Florida. *Calder,* 465 U.S. at 789-90.

U.S. at 292). At this juncture, Veen, not Fidelity, bears the burden of establishing a compelling case that makes the exercise of jurisdiction unreasonable. *Burger King, supra,* 471 U.S. at 477 ("Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable"). Veen offers only that he has no connections to Florida and that it would be grossly unfair for him to defend this action in Florida when Fidelity has an overwhelming financial advantage and clearly avails itself of Colorado's jurisdiction. I find these reasons insufficient. Taking the allegations as true, Veen's false and/or misleading communications directed to Fidelity in Florida constitutes purposeful unlawful activity in Florida. Fidelity relied upon Veen's representations in paying him a commission not due to him and alleges monetary loss as a result. Because Fidelity alleges injury in Florida due to Veen's tortious misconduct, Florida has a very strong interest in affording Fidelity a forum to obtain relief. *See Brennan,* at *5. Hence, holding Veen amenable to personal jurisdiction in Florida does not contravene basic notions of fair play and substantial justice.

For the reasons stated above, it is hereby

RECOMMENDED:

1. Veen's motion to dismiss Fidelity's complaint (doc. 11) be DENIED and Veen be directed to answer the Amended Complaint.

IT IS SO RECOMMENDED at Tampa, Florida, on this 15th day of July, 2009.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: Hon. James D. Whittemore